We move to the fifth case this morning, U.S. v. Bailey. Mr. Alvarado? Yes. May it please the court, counsel, I guess if there's one thing about the record in this case that's true, that is that whatever the effect of an offer to sell marijuana played on the police officers who were trying to buy a firearm, Mr. Bailey did very little to try to market the connection between the sale of a firearm and the marijuana itself. In fact, the only time marijuana was mentioned was in the very first phone call when Mr. Bailey said that he had some good weed for sale. Every other phone call, every other text message, all related to a gun transaction. There was no mention of price, quantity. There was no mention of a specific transaction that might take place for marijuana. It was all about the gun. In fact... You know, this may not be the usual scenario in which the defendant's position of a gun facilitates drug trafficking by playing a security role. But if someone like Mr. Allen is going to buy a gun regardless and is offered an opportunity to buy drugs at the same time, which he was on the very first phone call, as you said, why can't the fact finder conclude that the gun purchase facilitates the drug purchase? Because the actual reason that they did buy weed at the gun transaction is completely contradictory to that idea. If you look at page 125 of the trial testimony, this was brought up by the government in its brief, and it was a question by me to the case agent. I asked the case agent, whose idea was it to take $40 to the meet and try to buy some marijuana? And the agent said, well, it was either Allen, the informant, or me, but it was really both our ideas. And the reason we wanted to buy the marijuana was not because, well, it was because they wanted to make it seem plausible that they were there to buy more than one thing. Why were they there to buy more than one thing? Because more than one thing had been offered to them on that first call. But the case agent said that they wanted to have a drug transaction take place to distract Mr. Bailey, so that his attention wouldn't be on the undercover police officer who he had never met before, and who hadn't even been discussed before. So that that would take his attention away from the real transaction, which was the gun transaction. In other words, it was the drug transaction that facilitated the gun transaction, not the other way around. But it was Mr. Bailey that facilitated both. I think we lost him. Judge Rovner, we can't hear you. We can't. You're back on again. Oh, okay. I think I've forgotten. No. What was really surprising to me, Mr. Alvarado, was that Mr. Rovner was the only person in the courtroom Mr. Bailey doesn't know who's calling him, but he's offering not only a gun, he's offering the marijuana. I mean, oh my goodness. What a mistake. Right. In my experience, that's a very unusual situation, but that doesn't change the way that you should look at this transaction. He pleaded guilty to possession of the gun by a felon, and he pleaded guilty to delivery of the marijuana. All that we were saying was that there was no connection between the gun and the drugs such under 924C that the gun transaction furthered the drug trafficking crime. Yeah, but the gun transaction was what the whole deal was about, and I said, well, I'll throw in the marijuana too. Except the case agent was the one who directed the informant to buy that to draw attention away from the gun transaction. Well, we're more concerned about the seller and the buyer rather than what the case agent said. No, I understand that, but it was Alan's idea too that he felt that it would not be plausible for him to go there and not buy marijuana if he was bringing another man to buy a gun. And so the seller sold the marijuana to the buyer only to further the firearm transaction, not the other way around. And that's what the point of a 924C prosecution is. Now, the government also says that the marijuana was like a one-stop shop. You could get your marijuana, your firearms at one place, and that that was an incentive for a buyer like Alan and the police officer to buy a rifle. But they cited a case from this court which the facts showed much more of an incentive than what was at play here. The actual incentive in that case, and I believe it was the Vaughn case, the drug dealer said, look, to his underling, you meet my sales quota, you get rid of six kilos of weed, and I'll give you a rifle. So there was a specific non-theoretical fact that tied the firearm to the drugs. The only tie in this case is the simple fact that they were sold at the same place. And in the government's words, it's the milk in the back of the store. You go into the store, you're going to buy a gallon of milk, but you might grab something else on the way out. Your Honors, that's not sufficient, it seems to me, in a 924C prosecution to say that simply because they're both offered for sale at the same time that you have to ignore the requirement that the government point to specific non-theoretical facts that shows the tie between the rifle and the gun. What would be the difference, because it's what you mentioned, if they bought a pot and then bought a gun, and both of them, he pleaded guilty to both of those. What's the enhancement that you're talking about? I guess that's what you're talking about. The difference? Yeah. In terms of the punishment? I guess so. The government got an extra five-year sentence on Mr. Bailey simply because that transaction happened at the same time. He had already pleaded guilty to both of the offenses separately, and his sentence on that count, I believe, was 27 months. So he got an extra 60 months on top of it simply on this theory that the firearm furthered the drug transaction, and I respectfully say that it did not. Now, the government likes to talk about market theory and to try to explain how this is a valid connection between a rifle and a firearm, or a firearm and drugs, that somehow if you go in to buy a firearm and you can buy another drug item, that that satisfies the requirement of 924C. But as I told you right now, the case agent's plan was to do just the opposite. It was only to buy the drugs so that they could facilitate the firearm transaction. And so if there are no further questions, I would reserve my rebuttal time. Thank you, Counsel. Mr. Bull? Thank you. May it please the Court, Counsel. I'd like to start with the notion of what's in the case agent's mind. That, I believe, is a red herring. It doesn't matter why the purchaser is purchasing guns or marijuana. What matters is that the defendant's possession of the firearm here, did that facilitate the drug sale? And without Mr. Bailey's possession of the firearm, there simply is, on the facts presented here, no drug sale. He didn't know Mr. Allen. They had never dealt with each other before. Mr. Allen was never going to buy marijuana, whether with a case agent or on his own, from Mr. Bailey, except for the fact that Mr. Bailey was offering him a firearm for sale. It is his possession which facilitates, which promotes, which moves forward, which advanced, which furthered the drug sale. It's only because he possessed and then sold a firearm that he was able to make the drug sale. So what was in the case agent mind, whether he wanted to distract, whether he thought it was a more realistic scenario, is irrelevant to this Court's inquiry on whether Judge Mims' factual findings support the notion that it was Bailey's possession of the firearm that furthered the drug sale. Well, I guess the question would be what caused the purchase? I mean, he wanted the gun. I think, in fact, didn't the gun change in some point? It wasn't the same gun or something? That's right. Mr. Bailey at first offered two handguns and said, you better hurry and come get them quick because they're going to sell. And, in fact, they did sell. And then those two were for $500. And then he said, oh, I have another gun. You can get that one for $200. And when they bought the gun, there was testimony that he said, well, I've sold six other guns in the past week. So, I mean, if we really want to get to what caused law enforcement to want to do this, there's a guy out there selling guns on a routine basis that they want to stop. But he also sells marijuana and uses his gun sales to help him sell marijuana. And that's the point, I believe. I guess the question would be would he have bought the gun without having the ability to get some marijuana along with it? I think absolutely. The gun sale, there's no dispute, I don't think, that the gun sale was the main event here. I mean, law enforcement was interested in buying a gun, but it was Mr. Bailey who, as they concede in the first call, said, oh, and by the way, I also have, not only do I have guns for sale, I have marijuana for sale. But it was the gun that was the main event the entire time. He just used that opportunity to make a drug sale. And I guess that's what I'm asking. What would be the difference if he just sold the gun or bought the gun? Well, if he sold the gun, it wouldn't be in. . . You find out about a lot of other guns, which is a big deal. Right. And, of course, that assumes what enhanced his. . . It's the fact that he used that possession of the gun to further a drug sale that violates 924C. Just selling a firearm without a corresponding drug sale would not have violated 924C. It's sort of an incidental addition, but it accomplished violating 924C. Yeah, I think the Lipford case in the Fourth Circuit talks a little bit about this, is that people who deal in selling one illegal item make themselves a more attractive seller by selling multiple illegal items, and vice versa. Purchasers make themselves a better, more trustworthy purchaser if they're willing to buy guns and drugs as opposed to just guns, I suppose, is the theory. Was that more than a user amount of drugs? I think the $40, if it was, it was barely more. I don't think it was a . . . As the district court found, it was a very small marijuana purchase, but he said that's irrelevant. The question is, was it a controlled substance distribution, and there's no question about that. Unless there are any other questions, I will rest on the brief. Thank you, counsel. Thank you. How much time? You had about a minute. Your Honors, there's only one point I want to make. If this court is going to find, based on this thin factual findings here, that a 924C prosecution can result when you sell guns and drugs at the same time without anything more, without any other connection, then we're going to have an awful lot of 924C convictions and a lot more five-year sentences stacked on top of whatever other guideline range sentences need to be imposed. I don't think that's what was meant by this court in Vaughn and Castillo and in discussing the legislative history of why 924C was needed to be promulgated. The idea was that if you have a firearm and you do something with it in relation to a drug trafficking crime that furthers it, that advances it, that makes it more possible, that's when that five-year mandatory should kick in. And I don't believe that under these facts, the government has met its burden of showing that there is some connection between the two. Was your idea that what this should be is when somebody is buying drugs, they have a gun to protect themselves, the seller, is that what you think was intended? Well, there clearly is one intent. That's one theory of how a gun could further a drug trafficking crime. Another one would be if guns were exchanged for drugs or drugs exchanged for guns. Those are clearly proper uses. The third one, the third theory that this court has applied, is that there has to be some sort of incentive, some kind of an incentive. The but-for, wouldn't it happen otherwise? Not a but-for cause, I don't believe, but there has to be some incentive produced by the gun that made it more that a drug trafficking crime could occur. And just having guns and drugs for sale at the same time with no other facts, I don't think would meet that standard. Thank you, counsel. Thanks to both counsel, and the case is taken under advisement.